**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| UNWIRED PLANET, INC. (F/K/A OPENWAVE SYSTEMS, INC.),<br><br>    Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>    Defendant. | Civ. No. 14-967-SLR<br><br><br><br>Public Redacted Version |

**MICROSOFT CORPORATION'S OPENING BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT AND
ANSWERING BRIEF IN OPPOSITION TO UNWIRED PLANET'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Francis DiGiovanni (#3189)
Todd C. Schiltz (#3253)
Thatcher A. Rahmeier (#5222)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@dbr.com
todd.schiltz@dbr.com
thatcher.rahmeier@dbr.com

*Attorneys for Defendant Microsoft Corporation*

Dated:  December 23, 2015

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS .........................................2

SUMMARY OF ARGUMENT .........................................................................3

STATEMENT OF FACTS ................................................................................4

    A.    The License Agreement ..................................................................4

    B.    Although Inadmissible, the Negotiating History Supports the Plain Meaning of the License Agreement ........................................................7

        1.    The Parties' Discussions Result in ████████████ █████████████████████ .................................................7

        2.    The Parties Negotiate the Language of the License Agreement .....................................................................9

    C.    UP Acquires the Ericsson Patents ...............................................12

    D.    UP Licenses ████ Patents to Lenovo ████████████████ ................................................12

    E.    UP Wrongly Demands ████████ from Microsoft...................13

    F.    Microsoft Rejects UP's Demand for ████████ ........................14

    G.    The Parties Stipulate ████████████████████ .................................................14

ARGUMENT ..................................................................................................15

I.    SUMMARY JUDGMENT STANDARD ......................................................15

II.    CONTROLLING CONTRACT INTERPRETATION PRINCIPLES ............15

# TABLE OF CONTENTS
(continued)

Page

III.   THE LICENSE AGREEMENT IS UNAMBIGUOUS, AND SHOULD BE INTERPRETED IN ACCORDANCE WITH ITS PLAIN MEANING AS PROPOSED BY MICROSOFT ........................................................17

    A.   The ███████████ Provision Unambiguously Requires ████████████ ........................................17

    B.   The Intent of the Parties and the Purpose of a Conditional Payment Clause Is Consistent With Microsoft's Interpretation, Not UP's Interpretation........................................................20

    C.   UP Relies on Inadmissible Extrinsic Evidence to Rewrite ████ ████........................................22

    D.   UP's Interpretation Gives the Same Language Two Different Meanings........................................................23

    E.   UP's Interpretation Is Not Based on the Terms of the License Agreement, Misstates Microsoft's Position, and Leads to Absurd Results........................................................25

        1.   UP Never Analyzes the Actual Definition of ████ ████........................................................25

        2.   UP Misstates Microsoft's Position........................................................28

        3.   UP Reads Out ████ From the Definition of ████........................................................29

        4.   UP Proposed Construction Leads to Absurd Results........................................................30

    F.   The Extrinsic Evidence Is Inadmissible, Disputed, and in Any Event Does Not Support UP's Interpretation........................................................31

IV.   UP HAS NOT ████████████ ........................................................34

CONCLUSION   ........................................................34

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*AJZN, Inc. v. Yu,*
  1015 WL 331937 (D. Del. Jan. 26, 2015) ................................................. 16

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ................................................................................. 15

*Anguilla Re, LLC v. Lubert-Adler Real Estate Fund IV, L.P.,*
  2012 WL 5417101 (Del. Super. Nov. 5, 2012) ...................................... 24

*Bank of New York Mellon v. Realogy Corp.,*
  2008 WL 5259732 (Del. Ch. Dec. 18, 2008) ......................................... 20

*Capital Mgmt. Co. v. Brown,*
  813 A.2d 1094 (Del. 2003) ...................................................................... 16

*Citadel Holding Corp. v. Roven,*
  603 A.2d 818 (Del. 1992) ........................................................................ 15

*Conner v. Phoenix Steel Corp.,*
  249 A.2d 866 (Del. 1969) ................................................................. 23, 26

*Delaware Express Shuttle v. Older,*
  2002 WL 31458243 (Del. Ch. Oct. 23, 2002) ....................................... 32

*Deutsche Bank Sec. Inc. v. Lexington Drake L.P.,*
  2010 WL 4941997 (N.Y. Sup. Nov. 22, 2010) ...................................... 32

*Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.,*
  702 A.2d 1228 (Del. 1997) ...................................................................... 16

*El Paso Natural Gas Co. v. Amoco Prod. Co.,*
  1992 WL 43925 (Del. Ch. Mar. 4, 1992) ............................................... 20

*Fujisawa Pharm. Co. v. Kapoor,*
  655 A.2d 307 (Del. Jan. 17, 1995) .......................................................... 20

*Galantino v. Baffone,*
  46 A.3d 1076 (Del. 2012) ........................................................................ 17

*GMG Capital Invs., LLC v. Athenian Venture Partners I, LP,*
  36 A.3d 776 (Del. 2012) .......................................................................... 16

*GRT, Inc. v. Marathon GTF Tech., Ltd.*,
  2012 WL 2356489 (Del. Ch. June 21, 2012) .................................................... 23, 24

*Hamilton Partners, L.P. v. Highland Capital Mgmt., L.P.*,
  2012 WL 2053329 (Del. Ch. May 25, 2012) ........................................................ 16

*In re Westech Cap. Corp.*,
  2014 WL 2211612 (Del. Ch. May 29, 2014) ........................................................ 31

*Investment Assocs. v. Standard Power and Light Corp.*,
  48 A.2d 501 (Del. Ch. 1946), *aff'd*, 51 A.2d 572 (Del. 1947) ............................. 16

*Kuhn Constr., Inc. v. Diamond State Port Corp.*,
  990 A.2d 292 (Del. 2010) .................................................................................. 26

*Li v. Standard Fiber, LLC*,
  2013 WL 1286202 (Del. Ch. Mar. 28, 2013) ........................................................ 17

*Meijer v. Thompson*,
  655 F. Supp. 2d 607 (E.D. Va. 2009) .................................................................. 32

*Osborn ex rel. Osborn v. Kemp*,
  991 A.2d 1153 (Del. 2010) ................................................................................. 16

*Ostroff v. Quality Servs. Labs., Inc.*,
  2007 WL 121404 (Del. Ch. Jan. 5, 2007) ............................................................ 31

*Paul v. Deloitte & Touche, LLP*,
  974 A.2d 140 (Del. 2009) ................................................................................... 15

*Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*,
  616 A.2d 1192 (Del. 1996) ................................................................................. 16

*Smartmatic Intern. Corp. v. Dominion Voting Syss. Int'l. Corp.*,
  2013 WL 1821608 (Del. Ch. May 1, 2013) .......................................................... 16

*Tamarind Resort Assocs. v. Gov't of the Virgin Islands*,
  138 F.3d 107 (3d Cir. 1998) ............................................................................... 15

*Trustees of Bos. Univ. v. Ligand Pharms., Inc.*,
  2003 WL 22501588 (D. Del. Nov. 3, 2003) ......................................................... 15

*Veloric v. J.G. Wentworth, Inc.*,
  2014 WL 4639217 (Del. Ch. Sept. 18, 2014) ...................................................... 16

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................................ 15

## INTRODUCTION

This is a contract case.  Unwired Planet, Inc. (f/k/a Openwave Systems, Inc.) ("UP") advances a commercially unreasonable interpretation of the clear and unambiguous terms of a fully integrated Confidential Patent License Agreement ("License Agreement," B001-017 (D.I. 11, Ex. A & B)) in an attempt to extract ███████ from Microsoft Corporation ("Microsoft"). UP's interpretation ignores the plain meaning of the language in the License Agreement and, instead, relies on UP's unilateral and disputed view of inadmissible extrinsic evidence. Microsoft's interpretation, on the other hand, is not just *based on* the plain language of the License Agreement, it *is* the plain language of the License Agreement, and is the only reasonable interpretation.



Pursuant to the License Agreement, UP granted Microsoft a license ███████████ ███████████ For this license, Microsoft paid UP ███████, and agreed to pay an additional ███████ (for a total of ███████) to UP if—but *only* if—UP ███████ ███████████████████████. The License Agreement defined ███████ ███████████████████████████████ ███████████████████████████ Thus, the additional ███████ payment by Microsoft to UP (for a total payment of ███████) can be triggered only if UP ███████████████████████ ███████████████. This never happened:  UP has stipulated that ███████ ███████████████████████████ ███. D.I. 70 at ¶ 6.  Thus, Microsoft does not owe UP an additional ███████. Summary judgment should be entered in Microsoft's favor.

## NATURE AND STAGE OF THE PROCEEDINGS

UP filed its breach of contract complaint against Microsoft on July 22, 2014.  D.I. 1.

Microsoft answered and counterclaimed on September 12, 2014.  D.I. 11.

On July 29, 2015, the parties entered into a Stipulation and Order whereby ▮

▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ D.I. 70 ¶ 6.  UP further agreed that it ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ *Id.* at ¶ 7.  As part of that Stipulation, ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮ .  *Id.* at ¶ 8.  Thus, only UP's breach of contract claim ▮▮▮

▮▮▮ remains in the case.  Microsoft contends that the properly interpreted ▮▮▮

▮▮▮ clause, coupled with the Stipulation (D.I. 70), warrant summary

judgment in Microsoft's favor.

Fact discovery and expert discovery closed September 11, 2015, and November 13, 2015,

respectively.  Both parties moved for summary judgment on December 4, 2015, with UP serving

its opening brief on that date.[1]  This is Microsoft's combined Opening Brief in Support of its

Motion for Summary Judgment and Answering Brief in Opposition to UP's Motion for

Summary Judgment.

---

[1] Plaintiff's Opening Brief in Support of its Motion for Summary Judgment is referred to herein as "UP OB."

## SUMMARY OF ARGUMENT

1.      An additional, conditional ███████ payment under the License Agreement is triggered only if UP ████████████████████████ A ██████████████ is unambiguously defined in ████████ of the License Agreement as a ████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████ Thus, a critical requirement for a ████████████ is that ██████████████████████████████████████ ████████████████████████████████████████████████████ ██████████. UP's contrary interpretation (and application) of this clause would require Microsoft to pay UP an additional ██████████ (for a total of ██████████) if UP ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████. UP's contrary interpretation contravenes the plain language of the License Agreement, is illogical, commercially unreasonable, and based on inadmissible and disputed extrinsic evidence.

2.      UP cannot establish that it ████████████████████████ The Lenovo Agreement, which UP alleges ████████████████████████████████████ ████████████████████████████. UP ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████; and UP concedes that ██████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████. D.I. 70 ¶ 6. Thus,

3

UP cannot establish that ███████████████████████████████████

██████████████████████████████████████████████████.

    3.      Accordingly, summary judgment in favor of Microsoft is appropriate.

**STATEMENT OF FACTS**

The language of the License Agreement, and the Stipulation that ███████████████

█████████████████████████████████, are the undisputed facts

dispositive of this dispute.  Because the terms of the License Agreement are unambiguous, facts

outside the four corners of the License Agreement need not and should not be relied on.  But

even if evidence outside the contract is considered, it does not change the outcome and Microsoft

should win summary judgment.

    **A.**    **The License Agreement**

The License Agreement provides for ███████████████████████████

████████████████████████████████████████████

████████████████████████:

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

B003 at ██████.

It is now undisputed that ███████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████. B029-030 (Cordeiro 117:23-118:9).  It is likewise undisputed that

4

this definition applies throughout the License Agreement wherever the term ███████████ ███████████ is used.  B034 (Cordeiro 170:17-21); B044 (Bawel 10:9-11:11).

The grant clause of the License Agreement is ████████, and it memorializes both █ ████████████████████████████████████████████████████████████.

In pertinent part, it provides that:



B004 at ████ (emphasis added). ████████████ is defined as ████████████████ ████████████████████████████ B003 at ████.  Thus, it is undisputed that UP ████████████████████████████████████ B037-038 (Cordeiro 201:12-202:3).

In exchange for ████████████████████████, Microsoft agreed to pay UP an Initial License Fee of ████████ (B007 at § 5.1.1) and to pay an additional, conditional ████████ (for a total of ████████) ████████████████████████ ████████████████████. ████████ describes the conditional payment and defines ████████████████:



B007-008 at ███.

Under the unambiguous definition of ███████, in order for UP to qualify for the conditional ███ payment (to bring the total paid by Microsoft to ███), UP and █████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███ *Id.* Importantly, the █████████████████████████ ████████████████████ required by the definition of ██████████ ███████████████. *See* B004 at ███ █████████████████ ████████████████████████████. Also of note, the ███████████████████████████████████████████ equals the sum of the ███████ initial payment Microsoft agreed to pay plus the ███████ conditional payment.

The License Agreement contained a number of other provisions, including ████████ ██████████████████████████████████████████ ██████████████████████████████ B010 at ███ ███. The parties also expressly acknowledged that the License Agreement █████████ ██████████████████████████████████████████ ████████ and that it ██████████████████████████████████ ██████████████████████████ B011 at ███.

**B.** **Although Inadmissible, the Negotiating History Supports the Plain Meaning of the License Agreement**

The fully integrated License Agreement is unambiguous and, as a result, the parties' negotiating history is inadmissible and should not be considered in interpreting its terms. Nevertheless, even if considered, it supports Microsoft and does not alter the plain language of the License Agreement.

**1.** **The Parties' Discussions Result in** ████████████



████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████. A329; B024 (Cordeiro 81:11-13). ██████████

████████████████████████████████. B049 (Bawel 131:17-19

████████████████████████████████████.

Through negotiations, the parties eventually agreed to ██████████

████████████████████████████████████████

████████████████████. B060-067; B025 (Cordeiro 82:6-15). Microsoft

expressly told UP that ████████████████████████████

████████████████████████████████████:

\*          \*          \*



B045, B049 (Bawel 14:16-15:2, 131:17-132:2); *see also* B046 (Bawel 20:6-13).  Microsoft also told UP that,



B050 (Bawel 133:1-19).

  This understanding is reflected in the parties' correspondence.  During the parties' negotiation, a "Term Sheet" was crafted that provided for ████████████.  The parties agreed that this ████████████████████████████████████████████████████████ A354. ██

### 2.    The Parties Negotiate the Language of the License Agreement

Mr. Cordeiro, an admittedly sophisticated licensing professional with over fifteen years of experience drafting licensing agreements, was UP's sole negotiator and drafter with respect to the License Agreement.  B021-022, B023 (Cordeiro 33:11-34:8, 47:20-48:4).   The principal negotiator for Microsoft was Paul Bawel, Senior Attorney at Microsoft.  B027 (Cordeiro 90:22-91:4).

Microsoft sent an initial draft of the License Agreement to UP on September 13, 2011.



B023 (Cordeiro 47:14-18).  That draft defined ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  A026; UP OB at 6.  UP rejected that definition ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  UP's proposed language ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

The parties eventually settled on compromise language ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See* UP OB at 8; B034 (Cordeiro 170:17-21); B044 (Bawel 10:9-11:11).  It is further undisputed that the ▮▮▮▮▮



Microsoft also proposed additional language ███. The proposed language stated that the ███

███ A098. Microsoft added this language ███ B051 (Bawel 151:16-152:1 ███

███. UP responded with language that ███. B058 (Bawel 181:4-12 ███

---

[2] Microsoft originally asserted provisional counterclaims challenging UP's interpretation of the term ███ D.I. 11 at Counterclaim ¶ 17. ███ Eventually, however, UP confirmed its position: according to UP, ███ UP then admitted that it did not ███ D.I. 70 at ¶ 6. In exchange, Microsoft agreed to drop its counterclaims to narrow the issues in the case. This admission substantially narrowed the case and eliminated the need to engage in burdensome third party discovery. UP's effort to characterize Microsoft's motivation for asserting and dropping its counterclaim, *see* UP OB at 3, is unsupported and inaccurate.



B055 (Bawel 169:3-18); *see also* B055-056 (Bawel 172:7-173:13 (

).

---

[3] That the proposed text was ████████████ is undeniable. Specifically, the phrase ██████████████████████████████████ Similarly, the phrase requiring that the ████████ had to be ██████████████████████████.

The parties signed the License Agreement on September 30, 2011, seventeen days after Microsoft circulated the first draft of the agreement.  B011-012.  When the License Agreement was signed, UP owned approximately 260 patents and patent applications, ███████████ ████████████████████.  *See* B081, B091-92; B073 (Robbins 120:18-22).

### C.   UP Acquires the Ericsson Patents

On February 13, 2013, sixteen months after signing the License Agreement, UP acquired approximately 2,150 patents and patent applications, and the right to receive 100 additional patents per year for five years starting in 2014, from Telefonaktiebolaget LM Ericsson ("Ericsson").  B101-102.  Following this transaction, UP's patent portfolio consisted of (1) the 260 Openwave Licensed Patents, and (2) the 2,150 patents UP had received from Ericsson along with the right to an additional 500 patents from Ericsson (collectively, the "Ericsson Patents"). *See* B081, B091-092.

### D.   UP Licenses ████ Patents to Lenovo, ████████████████████████████

On April 17, 2014, UP closed an agreement with Lenovo PC International Limited ("Lenovo") pursuant to which Lenovo licensed ████ █████████████████████ ██████████.  B113-126; B103-104.  Of those patents, ██████████████████████████████ ████████████████████████████████████████████████.  *See* B143-147; B073-074 (Robbins 117:15-124:4).  ████████████████████████████████████.  *See* B074 (Robbins 123:19-124:4).  UP allocated $43.273 million received from Lenovo for *all* the licenses granted by UP to Lenovo under the Lenovo Agreement.  B103, B110.[4]

---

[4] ████████████████████████████████████████████████████████████████ ██████████████████████.  UP received $100 million from Lenovo in connection with both the sale and license transactions.  B103.  UP's 2014 Form 10-K states that UP retained an expert to allocate the $100 million among the three elements of the Lenovo



Faced with the unavoidable conclusion that ███████████████████████████

████████████████████████████████████, UP conceded (via

Stipulation, So Ordered by the Court) ███████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████ D.I. 70 at ¶ 6.  In other words, UP

acknowledges that ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████ .

**E.      UP Wrongly Demands ████████ from Microsoft**

On the same day that UP closed the Lenovo Agreement, UP wrongly represented to

Microsoft that ████████████████████████████████, and demanded an additional

████████  from Microsoft.   A414-423.   Microsoft responded by asking UP for additional

information ███████████████████, including ████████████████████████████

█████████████████████████. A019-020.

UP refused to provide the requested information.  B161-162.  Instead, UP stated that ████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████. A396-97 (emphasis added).  UP's

corporate representatives subsequently testified that this is UP's position.  *See* B027 (Cordeiro

transaction:   the sale of certain patents; the license of certain patents; and past patent
infringement damages.  The expert determined that $43.273 million should be allocated to the
patent license covering all ████ patents.  B110.

92:15-93:6 ███████████████████████████████████████████████

████████████████████████████████████████████████████████

███████ (emphasis added)); B028 (Cordeiro 111:15-20); B032 (Cordeiro 148:18-22); B071-

072 (Robbins 87:18-88:1; 89:10-90:2).

**F.     Microsoft Rejects UP's Demand for** ███████████

Based on UP's untenable reading of ██████████████ provision, Microsoft

refused UP's demand to pay ████████. Specifically, Microsoft responded to UP and explained

that the █████████████ provision ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████ A389-92.  Thus, Microsoft's position has been consistent from the

outset: UP ██████████████████████████████████████████

██████████████████████ in order to trigger the conditional payment clause and receive an

additional ██████████ from Microsoft.

**G.     The Parties Stipulate That** ████████████████████

████████████████████████████

UP then filed its Complaint, and Microsoft responded with its provisional counterclaims.

D.I. 1, 11.  After completing written discovery, the parties stipulated that █████████████

████████████████████████████████████████████████████████

███████.  D.I. 70 at ¶ 6.  Based on this, Microsoft agreed to drop its counterclaims to narrow the

issues for discovery and resolution, leaving for resolution only UP's breach of contract claim

based █████████████████████████.  *See id.* at ¶ 8.

**ARGUMENT**

## I.      SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   "[D]isputes involving the interpretation of unambiguous contracts are resolvable as a matter of law, and are, therefore, appropriate cases for summary judgment." *Tamarind Resort Assocs. v. Gov't of the Virgin Islands,* 138 F.3d 107, 110 (3d Cir. 1998).   "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).   "The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue." *Trustees of Bos. Univ. v. Ligand Pharms., Inc.,* 2003 WL 22501588, at *3 (D. Del. Nov. 3, 2003) (citing *Anderson,* 477 U.S. at 249-50).   Here, the only disputed facts relate to inadmissible parol evidence that the Court need not and should not consider; the only material issue is one of contract interpretation—a matter of law for this Court to decide.

## II.     CONTROLLING CONTRACT INTERPRETATION PRINCIPLES

The License Agreement is governed by Delaware law.   B009 at § 11.   Under Delaware law, the interpretation of contract language is a question of law. *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009).

In interpreting a contract, "[t]he language of the Agreement must . . . be the starting point," *Citadel Holding Corp. v. Roven,* 603 A.2d 818, 822 (Del. 1992), and it must be given its "common or ordinary meaning" and interpreted "as would an 'objectively reasonable third-party observer.'" *Smartmatic Intern. Corp. v. Dominion Voting Syss. Int'l. Corp.*, 2013 WL 1821608,

at *4 (Del. Ch. May 1, 2013) (citation omitted).  When determining what a reasonable person in the position of the parties would have meant, a court should interpret contractual language in a manner that leads to a fair, commercially reasonable, and not absurd result.  *Veloric v. J.G. Wentworth, Inc.*, 2014 WL 4639217, at *9 (Del. Ch. Sept. 18, 2014).  Indeed, "where there is a choice between a construction . . . comporting with 'fairness and reasonableness' as compared with a construction which will lead to unreasonable results, the former construction will be adopted."  *Investment Assocs. v. Standard Power and Light Corp.*, 48 A.2d 501, 506 (Del. Ch. 1946), *aff'd*, 51 A.2d 572 (Del. 1947); *see also Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010) ("An unreasonable interpretation produces an absurd result or one that no reasonable person would have accepted when entering the contract.").

The use of extrinsic evidence to interpret an unambiguous contract is not permitted. *Capital Mgmt. Co. v. Brown*, 813 A.2d 1094, 1097 (Del. 2003).  "If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create ambiguity."  *Id.* (citing *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1233 (Del. 1997)).  Likewise, "[a] contract is not rendered ambiguous simply because the parties do not agree upon its proper construction."  *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1996).  Rather, an ambiguity exists only when a contract is fairly susceptible to two or more reasonable interpretations.  *GMG Capital Invs., LLC v. Athenian Venture Partners I, LP,* 36 A.3d 776, 780 (Del. 2012).  An ambiguity does not exist if one of the proposed interpretations is unreasonable.  *AJZN, Inc. v. Yu*, 2015 WL 331937, at * 7 (D. Del. Jan. 26, 2015) ("'if one of two proffered meanings is unreasonable, there is no ambiguity'"); *Hamilton Partners, L.P. v. Highland Capital Mgmt., L.P.*, 2012 WL 2053329 (Del. Ch. May 25, 2012) ("a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations").

Finally, an integration clause serves as a presumption of integration, triggering the applicability of the parol evidence rule. *Li v. Standard Fiber, LLC,* 2013 WL 1286202, at *7 (Del. Ch. Mar. 28, 2013).  "The parol evidence rule bars the admission of evidence extrinsic to an unambiguous, integrated written contract for the purpose of varying or contradicting the terms of that contract." *Galantino v. Baffone,* 46 A.3d 1076, 1081 (Del. 2012).

### III. THE LICENSE AGREEMENT IS UNAMBIGUOUS, AND SHOULD BE INTERPRETED IN ACCORDANCE WITH ITS PLAIN MEANING AS PROPOSED BY MICROSOFT

The parties agree that the sole issue for the Court to resolve is the proper interpretation of the term ▮▮▮▮▮▮ UP OB at 1.  While Microsoft relies on the unambiguous language of the License Agreement and its clearly defined terms for its interpretation, UP offers no construction based on the text of the License Agreement itself but, instead, rewrites the contract's basic terms to match UP's unilateral and disputed view of inadmissible parol evidence.

**A.    The** ▮▮▮▮▮ **Unambiguously Requires That** ▮▮

Under the plain and unambiguous language of ▮▮▮▮▮



▮▮▮ B007-008 at § ▮▮.  Each of the elements of this definition are linked in the same sentence and all must be present in order for there to be ▮▮▮▮.  This is clear from the contract language, and UP does not dispute it. *See* B038; B038-039 (Cordeiro (202:3-204:1;  205:18-207:7 ▮▮▮▮

██████. As a result, merely receiving ████████ *for* ████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████.[5]

Basic rules of grammar support this conclusion. Although UP argues that the subject of the ████████████████ definition is just the word █████████[6] in fact the subject of the definition is ████████████: ████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████.

Basic tenets of contractual interpretation also compel this conclusion. The fact that ████████████████████ is a defined term that UP insisted include ████████████████ ███████████████████████████████████████████████ makes this conclusion all the more self-evident. UP cannot satisfy the definition ████████████ ██████████████████████████████████████████. Rather, UP must

---

[5] Notwithstanding its label, a ████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████ If UP meets all of these conditions, then Microsoft must pay an additional ████████. ████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████

[6] UP OB at 20 ████████████████████████████████████████ ████████████████ (emphasis in original).

receive ██████████████████████████████████████████████████████████

██████████████████████████████████████████.

     UP acknowledges the interplay between the definitions of █████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████  UP OB at 18.  Yet, UP's interpretation contravenes this interplay, and UP never

explains how the narrowly defined term ██████████████████  squares with its view that

the phrase ███████████████████████████████████████████

██████████████████████████  *See* B039 (Cordeiro 209:2-15).  UP's failure to address

this inconsistency in UP's reasoning is not surprising, because consistency in the use of the

definition of █████████████████████████████████████████████████████

█████████████████████, completely undermines UP's interpretation (and compels

Microsoft's interpretation) of ████████████████████

     UP contends that Microsoft's reading adds "additional requirements" to and rewrites the

definition of █████████████████████████████████████████████████████

██████████████████  UP OB at 2, 11, 18.  This is simply not true.  Microsoft, unlike UP, has

no need to read anything extra or different into the language of the License Agreement.  The

unmistakable meaning of the definition of ███████████████████  is readily discerned by merely

taking the plain English phrase (and common licensing terminology) ████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████.[7]  Consideration of these clear terms

---

[7] Not only does the plain English meaning of ████████████████████████  support
Microsoft's interpretation, but both parties' experts (Joseph Yang, Esq., for UP, and Emmett
Murtha for Microsoft) agree that the terminology █████████████████████  is used in patent

requires that ███████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████.

**B.      The Intent of the Parties and the Purpose of a Conditional Payment Clause Is Consistent With Microsoft's Interpretation, Not UP's Interpretation**

Microsoft's interpretation of ████████████████ is not only compelled by the plain meaning of the language of the License Agreement, but also by the parties' intent underlying that language as reflected in the License Agreement itself.

In Delaware, the "intent of the parties is ascertained from the language of the contract in its context." *Fujisawa Pharm. Co. v. Kapoor,* 655 A.2d 307, 1995 WL 24906, at *2 (Del. Jan. 17, 1995). The purpose of contractual language influences its interpretation. *See Bank of New York Mellon v. Realogy Corp.*, 2008 WL 5259732, *8 (Del. Ch. Dec. 18, 2008) (ascertaining "[t]he purpose of Section 2.03," and rejecting an interpretation under which "a nonsensical result would occur"); *El Paso Natural Gas Co. v. Amoco Prod. Co.*, 1992 WL 43925, *4 (Del. Ch. Mar. 4, 1992) (interpreting a contract so as to "reach[] a result that appears better to advance the purpose of a 'most favored nation' type provision").

The purpose of the ████████████████ provision is readily gleaned from its language. The ████████████████ provision is a *conditional payment* clause, or *escalation provision*,

licensing to ████████████████████████████████████████

██████████ B173-174 (Murtha Decl., Ex. A, ¶¶ 19-20); *see also* B206 (Yang Dep. 69:9-16

██████████████████████████████████████████████████

███████████████.

that conditionally provides UP with ████████ in additional compensation for ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████. It is not a coincidence

that ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████. *See* B045-046 (Bawel 16:23-17:12). The purpose and intent of the provision is

obvious from its language: ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████.

    This purpose is consistent with the well-understood purpose of conditional payment

clauses used in license agreements. *See* B176 Murtha Decl., Ex. A ¶ 24 ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████.

    ████████████████████████████████████████████████████

████████████████████████████████████████.[8]  *See* B050 (Bawel 133:1-19).

_____

[8] Microsoft does not dispute that if UP ████████████████████████████████████

████████████████████. Such an event would

fulfill the purpose ████████████████████████. The same is not necessarily true when

████████████████████████████████████████████████. UP is free

████████████████████████████████████████                ████████████████

████████████████████████; however, if UP enters such a transaction, ████████████

████████████████████████████████████████████████████████████

The triggering event must have a meaningful correlation to the rights  that are licensed to Microsoft under the License Agreement.  On the other hand, the

cannot trigger the conditional payment clause, because Microsoft did not

Accordingly, Microsoft's interpretation is consistent with the provision's purpose, while UP's interpretation would circumvent it and reward UP with an undeserved

### C.   UP Relies on Inadmissible Extrinsic Evidence to Rewrite

Rather than examine the actual terms of the License Agreement, UP anchors its construction on inadmissible extrinsic evidence.  UP OB at *passim* (relying on "the negotiating history" and events that occurred "[d]uring the parties' negotiations" to support its arguments).  Indeed, UP's Opening Brief contains no explanation of how the actual language of the License Agreement supports UP's reading.  *See* UP OB at 17-21.  Because the terms of the License Agreement are unambiguous, UP's approach violates basic rules of contract interpretation.  *See infra* at II.



. This is mandated by the definition of                                          . B048 (Bawel 25:3-27:1).   While UP suggests that

D.I. 70 at ¶ 6.   UP also engaged an expert to apportion the total Lenovo proceeds between the sale, license, and past infringement. *See infra* n.4.

UP's extrinsic-evidence-inspired reading rewrites the terms of the contract. According to UP, the definition of ███████████ should be read as follows:



*See* UP OB at 20 █████████████████████████████████████████

████████████████████; B027 (Cordeiro 92:15-93:24 ████████████████████████

████████████████████████████████████████████████████████████████████

████████; B028 (Cordeiro 111:15-20 ████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████. Like its reliance on extrinsic evidence to support its reading of an unambiguous contract, UP's attempt to rewrite the contract through the guise of contract interpretation violates basic tenants of contract construction. *See Conner v. Phoenix Steel Corp.*, 249 A.2d 866, 868 (Del. 1969) ("a court may not, in the guise of construing a contract, in effect rewrite it to supply an omission in its provisions").

### D.   UP's Interpretation Gives the Same Language Two Different Meanings

UP's interpretation also fails because it causes the phrase ████████████████████

████████ to have inconsistent meanings within the License Agreement. *See, e.g., GRT, Inc. v. Marathon GTF Tech., Ltd.,* 2012 WL 2356489, at *2-6 (Del. Ch. June 21, 2012) (rejecting a construction of a contract clause that "creates an internal inconsistency" and adopting construction that "is consistent with all of the contract terms" and "reconciles all of the provisions and is faithful to the plain language of the contract"); *Anguilla Re, LLC v. Lubert-*

*Adler Real Estate Fund IV, L.P.,* 2012 WL 5417101, at *5 (Del. Super. Nov. 5, 2012) ("the court must interpret the contract . . . in a manner that makes the contract internally consistent").

In ███████ of the License Agreement, UP ████████████████████████████ ████████████████████ B003-004 at ███████. This gave Microsoft ████████████ ████████████████████████████████████████████. *See infra* at pp. 9-10. Thus, UP agrees that, ████████████, the phrase ████████████ ████████████████████████████████████████████ ██████. B037-038 (Cordeiro 201:12-202:3).

In contrast, UP contends that the phrase ████████████████████████ in the definition of ████████████████ has a very different meaning. There, UP contends that this phrase means ████████████████████████████████████████ ██████. *See* B040 (Cordeiro 212:8-15) ████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████; B032 (Cordeiro 148:4-12).

It is wholly improper and objectively unreasonable to construe the phrase ████████ ████████████████████ or the defined term ████████████████ in an internally inconsistent manner. These terms must be given the same meaning throughout the License Agreement. *See GRT,* 2012 WL 2356489, at *2-6; *Anguilla Re,* 2012 WL 5417101, at *5. Yet, UP contends that the scope of the ████████████████████████ is narrow and limited by the defined term ████████████████, while simultaneously arguing that ██ ████████████████████████████████████████████ ████████████████████████████████████████. This approach is prohibited; UP cannot construe the same term to have different meanings in different parts of

24

the License Agreement. *Id.* Microsoft, in comparison, applies a consistent meaning to these terms throughout the License Agreement.

### E. UP's Interpretation Is Not Based on the Terms of the License Agreement, Misstates Microsoft's Position, and Leads to Absurd Results

On pages sixteen through twenty-one of the Opening Brief, UP makes a series of assertions under the heading "The Plain Language of the License Agreement Supports Finding that Unwired Planet ███████████████████████████████████" that are not based on any language in the License Agreement itself (let alone the definition of ███████████ ███████), misstate Microsoft's positions in this lawsuit, and lead to absurd results.

#### 1. UP Never Analyzes the Actual Definition of ████████████████

UP never addresses the actual language used in the License Agreement. *See* UP OB at 16-21. Instead, UP bluntly declares that the ███████████████████████████████████ ███████████████████████ provision because, according to UP:

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

UP OB at 17 (emphasis added). Even if UP's paraphrasing of the ████████████████████ definition is accepted, the term ████████████ as used in part (3) has, as its antecedent basis, the phrase ███████████████████████████████████ Thus, Microsoft's interpretation results: ███████████████████████████████████████████████ ██████████████████. The only way UP's construction results is if two different meanings are attributed to the word ████████ The first is in part (1), where UP uses ███████████████ ███████████████████████████████████ The second is in part (3), where UP would contend that ███████████████████████████████████████████████

████████████████████████████████████████████████████████████

████ .  UP again mixes apples and oranges, ignores the impact of the defined term ████████

████████████ , and ignores the fact that the plain language requires ████████████████

████████████████████████████████████████████████████████████

████ .  Inconsistencies and alterations of this nature are not permitted under the guise of

contract interpretation.   *See Conner*, 249 A.2d at 868 ("a court may not, in the guise of

construing a contract, in effect rewrite it to supply an omission in its provisions").

UP also bluntly declares that ██████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ UP OB at 20.

Yet, as detailed above, the express definition of ██████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████ UP's misguided effort to ignore the actual contract terms and rewrite the

definition of ████████████████ must be rejected.   *See Kuhn Constr., Inc. v. Diamond State

Port Corp.*, 990 A.2d 292, 396 (Del. 2010) (the court "will read a contract as a whole and we

will give each provision and term effect").

Instead of parsing the actual language of the contract, UP looks to extrinsic evidence and

argues that during the drafting process both parties understood that ██████████████

████████████████████████████████████████████████████████████

████████ .  OB at 20.   While UP was of course free to ██████████████████████

████████████████████████████████████████████ , that does not mean:  (i)

that UP can ignore the express terms of the License Agreement, which require that ██████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ ; or (ii) that the parties

agreed that the phrase ████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████ .

B039 (Cordeiro at 209:11-15).  To the contrary, it is undisputed the parties agreed that ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████ .

*See infra* at pp. 9-10.  Consistent with those undisputed facts, Microsoft expressly advised UP

that, if it wanted to collect the additional ████████ , UP had to █████████████████████████

██████████████████████████████████████████ :





B048 (Bawel 25:3-27:1).

## 2.     UP Misstates Microsoft's Position



UP states that Microsoft's position is that ███████████████

███████████████████████████████████████████████

███████████████████. OB at 18. This is not Microsoft's position. As reflected in

Mr. Bawel's testimony above, UP could ████████████████████████

███████████████████████████████████████ could

result in the triggering ██████████████████; however, to do so, UP must

███████████████████████████████████████████████

B007-008 ████████; B048 (Bawel 25:3-27:18).[9]

UP similarly argues that, under Microsoft's interpretation, the term ███████████

████████ is the subject of the phrase ███████████████████████

██████████████████████████████████. UP OB at

20. This is incorrect. As set forth above, the subject of ████████████████

_____

[9] UP's mischaracterization of Microsoft's position is just ██████████████

███████████████████████████████████████████████

███████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████ in order to receive the additional ██████████ from Microsoft.  UP even takes its

strawman argument one step further by stating that ████████████████████████████

████████ UP OB at 20.  Microsoft agrees; and under Microsoft's interpretation, ████████████

████████████████████████████████.  There is no dispute that ████████████

███████████████████████████████████████████

███████████████████████████████████████.

     3.    **UP Reads Out** ███████████ **From the Definition of** ████████████
████████

    UP's construction also ignores the term ██████████ A █████████████████ is defined

as a ████████████████████████████████████████████

████████████████████████████ B007-008 at ████████ (emphasis added).

The ██████████████████████████████████████████:  there must be a

███████████████████████████████████████████

████████████████████████████████████████.  *Id.*  Under

ordinary precepts of English grammar, ███████████████████████████████

███████████████████████████████████████████

████████████████████.[10]  Thus, ████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

───────────────────

[10] ████████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████████

██████   in order to receive a total of ███████ (███████ up-front plus ███████ conditional) from Microsoft. UP ignores this plain language, violating basic tenets of both contract interpretation and grammar.

### 4.    UP's Proposed Construction Leads to Absurd Results

Under UP's interpretation, ██████████████████████████████████████████ ████████████████████████████████████. This interpretation is incongruous, unreasonable, and invites contrived behavior, leading to absurd results—as this case demonstrates. One of UP's corporate representatives confirmed that, under UP's interpretation, ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████:



B072 (Robbins 89:10-90:7).

This is an absurd result that ignores the facially clear purpose of ████████████ ██████: to provide UP with an additional ███████ in consideration if it demonstrates ████ ████████████████████████████████████████████████

████████████████████████████████. Sophisticated parties would not agree to an easily manipulated, nonsensical trigger—and did not here—as evidenced

by the actual language used in the License Agreement.  UP's interpretation leads to absurd results and should be rejected.  *See Investment Assocs.*, 48 A.2d at 506 (constructions which lead to reasonable results control over constructions which lead to unreasonable results).

### F.   The Extrinsic Evidence Is Inadmissible, Disputed, and in Any Event Does Not Support UP's Interpretation

In an effort to both manufacture an ambiguity, and then resolve that manufactured ambiguity in its favor, UP heavily relies on the drafting history and UP's own deposition testimony, while ignoring conflicting Microsoft testimony.[11]  *See* OB at 21-25.  UP's arguments are precluded under the parol evidence rule, and in any event fail.

As an initial matter, because ████████████ provision is unambiguous, an examination of parol evidence, including the drafting history, is not appropriate.  *See infra* at II. The License Agreement's integration clause ████ further precludes reliance on parol evidence. *Id.*  And resort to extrinsic evidence is never appropriate to create an ambiguity.  *Id.*  But even if the Court were to consider the drafting history and related testimony, it does not support UP's self-serving interpretation, for several reasons.

First, negotiation history cannot override contractual language, especially in an integrated contract.  *See In re Westech Cap. Corp.*, 2014 WL 2211612, at *17 (Del. Ch. May 29, 2014) (concluding that any "insights [that] may be drawn from [an email containing drafting history exchanged during negotiations] do not dislodge the conclusion reached [] regarding the drafters' intent based on the plain text and structure of the agreement").  ████████████████

---

[11]  Even if UP's one-sided parol evidence is taken as true, the actual language used in the ████████████ provision leads "reasonably and rationally to only one conclusion," that put forth by Microsoft.  *See Ostroff v. Quality Servs. Labs., Inc.*, 2007 WL 121404, at *11-12 (Del. Ch. Jan. 5, 2007) (finding it "inappropriate" to consider extrinsic evidence where agreement is not ambiguous and stating that "a search for . . . intent does not 'invite a tour through the plaintiff's cranium, with the plaintiff . . . as the guide'").

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.

B007-008 at ███████.

Second, UP's underlying premise—that proposed-but-not-adopted language exchanged during contract negotiation requires the contract to be interpreted to avoid the proposed language—is something that courts reject. *See Delaware Express Shuttle v. Older*, 2002 WL 31458243, at *8 (Del. Ch. Oct. 23, 2002) (construing a contract in a manner that was consistent with text that was proposed, then not adopted, in the drafting process); *Deutsche Bank Sec. Inc. v. Lexington Drake L.P.*, 2010 WL 4941997, at *8 (N.Y. Sup. Nov. 22, 2010) (same); *Meijer v. Thompson*, 655 F. Supp. 2d 607, 615 (E.D. Va. 2009) (rejecting argument that ambiguous contract could not be read in a manner consistent with rejected draft language because "there is no evidence that the choice of the final language in the [contract] reflected a substantive rejection of the proposed draft language") (Delaware law).

Third, the negotiating history shows that UP ████████████████████████████ ████████████████████████████ definition was ultimately adopted in the final agreement, and that this definition was to apply wherever used throughout the contract. *See infra* at pp. 9-10.  UP cannot now contravene ████████████████████████████████ ████████████████████████████████████████████████████.  To hold otherwise would allow UP to "have its cake and eat it too."

Fourth, UP ignores pertinent negotiating history pertaining to ████████████████ ███████████.  The parties' correspondence shows that the ████████ conditional payment would only be triggered by ████████████████████████████ *See infra* at p. 8; A354.  This shows that the conditional payment, from its inception, was tied to a triggering event that ████████████████████████████



Fifth, Mr. Bawel testified that ████████████████████████████████

████████████████████████████████████████████████████████████

████████. *See infra* at pp. 10-11; B051 (Bawel 151:16-152:1). ████████████

████████████████████████████████████. *See infra* at pp. 10-11; B052 (Bawel

159:7-160:17).

Sixth, Mr. Bawel further testified that ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████. *See infra* at pp. 10-11; B051 (Bawel 151:16-152:1).

Mr. Bawel's testimony was clear:



B055 (Bawel 169:3-18).[12]

Thus, even if extrinsic evidence is considered, it does not establish that the parties sought

to alter the plain meaning of the language of the ████████████████ provision.

───────────────────────

[12] UP suggests that any ambiguity "must be resolved against Microsoft" under the "forthright negotiator principle." UP OB at 21 n.6. There is no record evidence to support UP's position. As the cited testimony makes clear, Microsoft repeatedly communicated to UP Microsoft's view that ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████. Thus, UP was aware of Microsoft's position and any ambiguity must be resolved against UP under the forthright negotiator principle.

**IV.    UP HAS NOT** ███████████████████████████████████

As established above, the clear terms of the License Agreement require ██████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

██████████.  UP has stipulated that ████████████████████████████████████

████████████████████████████████████████████████████.  D.I. 70 at ¶

6.  Thus, UP ████████████████████████████████.

## CONCLUSION

All the material, undisputed facts support Microsoft, and the Court should reject UP's bid

to have the Court ignore plain and unambiguous contract language and re-write clear contractual

terms based on inadmissible, irrelevant, and disputed parol evidence.   Microsoft respectfully

requests that the Court grant summary judgment in Microsoft's favor and against UP.

Dated:  December 23, 2015

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)
Todd C. Schiltz (#3253)
Thatcher A. Rahmeier (#5222)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Ph:  (302) 467-4200
francis.digiovanni@dbr.com
todd.schiltz@dbr.com
thatcher.rahmeier@dbr.com

Attorneys for Defendant Microsoft Corp.

83814346.1